IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DEVELOPMENTAL TECHNOLOGIES, LLC )<br>A Florida Limited Liability Company )<br>)<br>Plaintiff, )<br>)<br>v. )<br>) Case No.:<br>VALMONT INDUSTRIES, INC. ) **JURY TRIAL REQUESTED**<br>A Delaware Corporation )<br>)<br>and )<br>)<br>E.I. DU PONT DE NEMOURS AND COMPANY )<br>A Delaware Corporation )<br>)<br>Defendants. )<br>_____/ | |

**COMPLAINT**
**AND DEMAND FOR INJUNCTIVE RELIEF AND JURY TRIAL**

Plaintiff, DEVELOPMENTAL TECHNOLOGIES, LLC, by and through its undersigned attorneys, alleges, upon information and belief, as follows:

**THE PARTIES**

1. Plaintiff, Developmental Technologies, LLC ("DTL"), is a Florida Limited Liability Corporation, having its place of business at 6404 Manatee Avenue W., Suite N, Bradenton, Florida 34209.

2. Upon information and belief, Defendant, Valmont Industries, Inc., ("Valmont"), is a Delaware Corporation, having its principal place of business at 1 Valmont Plaza, 5th Floor, Omaha, Nebraska 68154.

3. Upon information and belief, Defendant, E.I. Du Pont De Nemours and Company, ("DuPont"), is a Delaware Corporation, having its principal place of business at 1007 Market Street, Room 8042, Du Pont Building, Wilmington, Delaware 19898.

## NATURE OF THE ACTION

4. This action arises out of Defendant Valmont's and Defendant DuPont's unauthorized removal and misappropriation of DTL's proprietary, confidential, and trade secret information ("Confidential Information") in connection with their visits to DTL's worksite as it relates to DTL's product, Eco-Ag. Eco-Ag is a plant irrigation system.

5. DuPont and Valmont were approached by DTL regarding the Eco-Ag product. When an agreement with these companies failed to materialize, DuPont and Valmont decided to use the Confidential Information for their own joint product, the Root Demand Irrigation subsurface irrigation system ("RDI").

6. Before any visit to the DTL worksite by DuPont or Valmont, where the Confidential Information was disclosed to them, both DuPont and Valmont signed non-disclosure and non-use agreements.

7. DuPont/Valmont's product, the RDI, contains many features disclosed during their visits to the DTL worksite and covered by the non-disclosure agreements. The Confidential Information specifically relates to DTL's confidential, proprietary, and trade secret information involving, with reasonable particularity:

- installation details of the Eco-Ag system and system layouts;
- recommended operating procedures of the Eco-Ag system;
- necessary curing times at varying pressures and temperatures of the Eco-Ag system;

- properties of the material while in use with the Eco-Ag system; and
- information regarding DTL's sales volumes, revenue, profit, market data, regional breakdowns, and market share/growth.

8. Without immediate injunctive relief requiring DuPont and/or Valmont to cease continuing with the RDI product, and enjoining DuPont and/or Valmont and those acting in concert with them from further accessing or using the Confidential Information, DTL will suffer irreparable harm. Conversely, DuPont and/or Valmont will suffer no harm as they have no lawful right to use DTL's confidential, proprietary, and trade secret information.

9. DuPont and Valmont's agreements with DTL expressly provide that no license was granted by disclosure of the Confidential Information.

10. DTL brings this action to protect its trade secrets and confidential information and to seek redress from the harm that DuPont's and Valmont's wrongful conduct has caused and will cause DTL. DTL seeks an injunction and appropriate order to, as more fully described in the prayer below, enjoin DuPont and Valmont from directly or indirectly disclosing or utilizing DTL's confidential, proprietary, and/or trade secret information. Further, DTL seeks compensatory relief for the unjust enrichment that has resulted from the improper misappropriation of DTL's trade secrets and confidential information. All appropriate fines and fees should be levied against Valmont and DuPont as well.

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of attorney's fees, costs, and interest.

12. This Court also has jurisdiction pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and 28 U.S.C. § 1331 for a federal question under the laws of the United States and under 28 U.S.C. § 1338(a).

13. This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. § 1367(a).

14. This Court has personal jurisdiction over DuPont because DuPont is doing business in the state, committed a tortious act within this state, and/or by breaching a contract causing damage in this state, all of which have a nexus to this action.

15. This Court has personal jurisdiction over Valmont because Valmont committed a tortious act within this state, doing business within this state, and/or by breaching a contract causing damage within this state, all of which have a nexus to this action.

16. Venue is predicated under 28 U.S.C. §§ 1391 and 1400.

**BACKGROUND FACTS**

17. DTL is a privately held research and development company whose Eco-Ag irrigation systems deliver water and nutrients to plant life using a mix of patented and proprietary methods.

18. DTL's focus is to develop technologies to the commercial stage and then partner strategically with companies that have a financial interest in the agricultural industry.

19. DTL has developed and maintained valuable relationships and substantial goodwill with its intended customers.

20. DTL's business information, including its confidential, proprietary, and trade secret information, intended customer relationships and goodwill, are of paramount significance to its business reputation and success.

21. DTL's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons.

22. DTL subjects its trade secrets to efforts that are reasonable under the circumstances to maintain their secrecy. These efforts include, among other things, requiring third parties to sign and abide by non-disclosure and non-use agreements.

## ENTER DUPONT AND VALMONT

23. Starting in 2009, DTL contacted DuPont with regard to DTL's irrigation system products. The main purpose of the contact was to establish a potential relationship with DuPont based on the Eco-Ag product.

24. Similarly, starting in 2009, Valmont had multiple contacts with several employees of DTL, as well as investment bank AgriCapital, also in regard to DTL's irrigation system products. Similar to DuPont, the main purpose of the contact was to establish a potential relationship with Valmont based on the Eco-Ag product.

25. On March 6, 2009, Valmont entered into a non-disclosure and non-use agreement with DTL, signed by Vice President of Engineering Craig Malsam, establishing guidelines for use and disclosure the Confidential Information that would be disclosed to Valmont. The March 6, 2009 agreement with Valmont is incorporated herein by reference. Valmont, on information and belief, has a copy of the agreement and it will be produced in discovery under appropriate confidentiality restrictions.

26. On August 24, 2009, DuPont executed a non-disclosure and non-use agreement, signed by Joseph Guckert, R&D Manager New Sheet Structures and HMT. The August 24, 2009 agreement with DuPont is incorporated herein by reference. DuPont, on information and

belief, has a copy of the agreement and it will be produced in discovery under appropriate confidentiality restrictions.

27. On November 23, 2009 DuPont brought in a consultant, Dr. Frank Lichtner, to help examine the Eco-Ag product. Dr. Lichtner signed a non-disclosure and non-use agreement with DTL on November 23, 2009. The November 23, 2009 agreement is incorporated herein by reference. DuPont, on information and belief, has a copy of the agreement and it will be produced in discovery under appropriate confidentiality restrictions.

28. On September 19, 2011, Valmont signed a different non-disclosure and non-use agreement, this time signed by Vice President of Corporate Development Brian Desigio. The September 19, 2011 agreement is incorporated herein by reference. Valmont, on information and belief, has a copy of the September 19, 2011 agreement and it will be produced in discovery under appropriate confidentiality restrictions. All non-disclosure agreements will henceforth be known as "The Non-Disclosure Agreements."

29. The purpose of The Non-Disclosure Agreements was so that the parties, DTL and Valmont/DuPont, could gauge mutual interest in a possible business partnership regarding the Eco-Ag product and related irrigation technology.

**VISITING THE DTL SITE**

30. After signing The Non-Disclosure Agreements, DuPont representatives visited the DTL site on several occasions.

31. Between August 25, 2009 and September 1, 2010, several DuPont representatives visited the DTL site. Besides DTL employees, the people present during these visits representing DuPont included, but are not limited to, Bruce Carter, Dr. Frank Lichtner, Bob Matheson, Jim Pawloski, Lisa Johnson, Neil Avison, and Debra Dishong.

-7-

32. Valmont's representative, Jake LaRue, visited the DTL site on October 15, 2009.

33. During the visits, described above, DTL disclosed Confidential Information relating to irrigation processes and the Eco-Ag product to both Valmont and DuPont. Marketing images and notes were provided to DuPont and Valmont (hereinafter the "Works").

34. The Works were created by DTL employees in the scope of their employment.

35. On DuPont's September 1, 2010 visit, DuPont proposed to invest into DTL and Eco-Ag. DuPont's proposed investment, however, was conditioned on unrealistic benchmarks which, on information and belief, DuPont knew to be unreasonable and unattainable.

36. DuPont entered into discussions with Valmont shortly after the September 1, 2010 visit to DTL regarding the Eco-Ag product and their mutual interest and concerns.

37. DTL gave DuPont and Valmont limited permission to discuss the Confidential Information between themselves on two occasions. The first permission came from DTL's counsel granting permission to continue discussions until October 21, 2010. After DuPont returned and requested further time, Ed Sinda, Vice President of DTL, wrote in an email that the period for allowed discussion could be extended until December 1, 2010.

## USE OF CONFIDENTIAL INFORMATION

38. At no point did DTL authorize to DuPont or Valmont to use or discuss the Eco-Ag product or any of the Confidential Information after December 1, 2010. Nor were DuPont or Valmont authorized to use the Confidential Information for any purpose other than as authorized by the respective agreements.

39. The Non-Disclosure Agreements forbid the use of the Confidential Information for the Defendants' benefit and forbid permitting others to use the Confidential Information for their benefit or to the detriment of DTL. For example, the September 29, 2011, Valmont

agreement at Paragraph 3 states the following (CIR stands for "Confidential Information Recipient"):

> <u>Obligations of CIR</u>. Where CIR receives Confidential Information, it will hold and maintain the Confidential Information in strictest confidence for the sole and exclusive benefit of DTL. CIR shall carefully restrict access to Confidential Information to employees, and agents with a "need to know" and shall obligate those individuals to whom it gives access to Confidential Information to abide by the same restrictions and covenants as imposed upon CIR herein. **CIR shall not use for CIR's own benefit**, publish, copy, or otherwise disclose to others, or permit the use by others for their benefit **or to the detriment of DTL**, any Confidential Information. CIR shall not use information outside the scope for which DTL intended to disclose same. CIR shall return to DTL any and all records, notes, and other written, printed, or tangible materials in its possessions pertaining to Confidential Information within ten (10) business days if DTL requests it in writing. **CIR hereby warrants and represents that it will not use the Confidential Information disclosed under this agreement except for the purpose of determining CIR's interest in entering into a business transaction between the undersigned.**
> (emphasis added)

40. Currently, Valmont and DuPont are partnered and developing and launching a new product in the field of crop irrigation. Root Demand Irrigation ("RDI"), currently advertised by Valmont at www.rootdemandirrigation.com (last visited November 3, 2014, 8:15 AM). RDI is an irrigation system for plants which uses several features of the Confidential Information.

41. The RDI features a "perfectly positioned" system which includes Tyvek, a DuPont product. The system is a "low pressure" system for irrigation and fertigation. RDI tubes are reactive to plant exudates allowing for the supply of water without gaps in coverage.

42. Upon information and belief, the features described in above use the Confidential Information disclosed to DuPont and Valmont while under the Non-Disclosure Agreements.

43. Upon information and belief, this joint venture between DuPont and Valmont is in direct violation of the agreements they signed with DTL.

44. On information and belief, DuPont and Valmont each also separately committed acts of Copyright Infringement relating to the Works owned by DTL. DTL reserves the right to seek leave to amend this Complaint as it learns through discovery which Copyrighted works DuPont and/or Valmont infringed or aided in the infringement of.

45. Injunctive and compensatory relief is necessary to remedy the harm caused by Defendants' violations.

### COUNT I
### MISAPPROPRIATION OF TRADE SECRETS
### AGAINST VALMONT

46. DTL realleges all allegations as set forth above in paragraphs 1-45 as if set forth herein.

47. This is an action against Valmont for an Injunction and Damages based on violations of the Non-Disclosure Agreements and/or Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.* ("FUTSA").

48. DTL is the owner of the misappropriated Confidential Information.

49. The misappropriated Confidential Information constitutes "trade secrets" pursuant to Fla. Stat. § 688.002.

50. The misappropriated Confidential Information has independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

51. DTL has taken reasonable steps and efforts to maintain the secrecy of the misappropriated Confidential Information.

52. On information and belief, Valmont has misappropriated the Confidential Information, all of which belongs to DTL, in direct violation of the Act and is using a substantial

portion of DTL's trade secret to create an improvement or modification that is substantially derived from DTL's trade secret.

53. On information and belief, Valmont intended or intends to improperly use or disclose DTL's trade secrets to others in the future, in violation of FUTSA and their agreements with DTL.

54. On information and belief, Valmont knew or had reason to know that it acquired the misappropriated Confidential Information through improper means under circumstances giving rise to a duty to maintain its secrecy.

55. Valmont's misappropriation of DTL's Confidential Information was willful and malicious.

56. As a direct and proximate result of the above-described misappropriation of DTL's Confidential Information, Plaintiff has been damaged, for which it is entitled to damages as provided by Fla. Stat. § 688.004, attorneys' fees as provided by Fla. Stat. § 688.005, interest, costs, and any other relief deemed proper by the Court.

57. Unless continued to be restrained, Valmont will continue to misappropriate and use DTL's Confidential Information to DTL's detriment. Accordingly, pursuant to Fla. Stat. § 688.003, Plaintiffs are entitled to obtain immediate injunctive relief to enjoin Valmont from its continued actual and/or threatened misappropriation of DTL's Confidential Information.

### COUNT II
### MISAPPROPRIATION OF IDEA
### AGAINST VALMONT

58. DTL realleges all allegations as set forth above in paragraphs 1-45 as if set forth herein.

59. DTL'S Confidential Information and Eco-Ag product are novel.

60. DTL disclosed the Confidential Information and Eco-Ag to Valmont in confidence.

61. On information and reasonable belief, Valmont adopted and used DTL's Confidential Information and Eco-Ag.

62. Plaintiff is entitled to damages and equitable remedies, including injunctive relief, to enjoin Valmont from its continued use of DTL's Confidential Information and ideas.

## COUNT III
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) AGAINST VALMONT

63. DTL realleges all of the allegations set forth above in paragraphs 1-45 as if set forth herein.

64. DTL and Valmont were engaged in trade or commerce in Florida

65. Valmont, among other things, willfully and maliciously misappropriated DTL's Confidential Information and ideas.

66. Valmont's actions constitute unfair or deceptive acts or practices or unconscionable acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, sections 501.201 through 501.213 of the Florida Statutes.

67. As a result of Valmont's unfair or deceptive acts or practices or unconscionable acts or practices, DTL would not have disclosed its Confidential Information or ideas to Valmont.

68. As a result of Valmont's unfair or deceptive acts or practices or unconscionable acts or practices, DTL has sustained and continues to sustain substantial actual damages.

## COUNT IV
## UNFAIR COMPETITION
## AGAINST VALMONT

69. DTL realleges all of the allegations set forth above in paragraphs 1-45 as if set forth herein.

70. Valmont's use of the Confidential Information to sell irrigation products in competition with DTL's irrigation products constitutes unfair competition pursuant to 15 U.S.C. § 1125(a) and Federal common law.

71. Valmont's unfair competition has caused and will continue to cause damage to DTL, and is causing irreparable harm to DTL for which there is no adequate remedy at law.

72. Valmont has been unjustly enriched through its actions and should be disgorged of any unjust gains.

## COUNT V
## BREACH OF CONTRACT
## AGAINST VALMONT

73. DTL realleges all of the allegations set forth above in paragraphs 1-45 as if set forth herein.

74. DTL entered into a non-use and non-disclosure agreement with Valmont. The Nondisclosure Agreements are valid and enforceable contracts. The confidentiality and nonuse covenants and other provisions contained in the agreements are reasonably necessary to protect legitimate protectable interests in trade secrets, confidential information, customer relationships, work force, and goodwill.

75. DTL has fully performed all of its obligations under the Nondisclosure Agreements.

76. Valmont is breaching and threatens to continue to breach the Nondisclosure Agreements by, among other things:

      A.    continuing to offer for sale the RDI in violation of the the Nondisclosure Agreements;

      B.    disclosing to other third parties the Confidential Information in violation of the the Nondisclosure Agreements; and

      C.    otherwise utilizing DTL's Confidential Information in a manner for their benefit or to the detriment of DTL in violation of the Nondisclosure Agreements.

77. DTL has been damaged by Valmont's breach of the Nondisclosure Agreements.

### COUNT VI
### MISAPPROPRIATION OF TRADE SECRETS
### AGAINST DUPONT

78. DTL realleges all allegations as set forth above in paragraphs 1-45 as if set forth herein.

79. This is an action against DuPont for an Injunction and Damages based on violations of the Non-Disclosure Agreements and/or Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.* ("FUTSA").

80. DTL is the owner of the misappropriated Confidential Information.

81. The misappropriated Confidential Information constitutes "trade secrets" pursuant to Fla. Stat. § 688.002.

82. The misappropriated Confidential Information has independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

83. DTL has taken reasonable steps and efforts to maintain the secrecy of the misappropriated Confidential Information.

84. On information and belief, DuPont has misappropriated the Confidential Information, all of which belongs to DTL, in direct violation of the Act and is using a substantial portion of DTL's trade secret to create an improvement or modification that is substantially derived from DTL's trade secret.

85. On information and belief, DuPont intended or intends to improperly use or disclose DTL's trade secrets to others in the future, in violation of FUTSA and their agreements with DTL.

86. On information and belief, DuPont knew or had reason to know that it acquired the misappropriated Confidential Information through improper means under circumstances giving rise to a duty to maintain its secrecy.

87. DuPont's misappropriation of DTL's Confidential Information was willful and malicious.

88. As a direct and proximate result of the above-described misappropriation of DTL's Confidential Information, Plaintiff has been damaged, for which it is entitled to compensatory, exemplary, and punitive damages as provided by Fla. Stat. § 688.004, attorneys' fees as provided by Fla. Stat. § 688.005, interest, costs, and any other relief deemed proper by the Court.

89. Unless continued to be restrained, DuPont will continue to misappropriate and use DTL's Confidential Information to DTL's detriment. Accordingly, pursuant to Fla. Stat. § 688.003, Plaintiffs are entitled to obtain immediate injunctive relief to enjoin Valmont from its continued actual and/or threatened misappropriation of DTL's Confidential Information.

## COUNT VII
## MISAPPROPRIATION OF IDEA
## AGAINST DUPONT

90. DTL realleges all allegations as set forth above in paragraphs 1-45 as if set forth herein.

91. DTL'S Confidential Information and Eco-Ag product are novel.

92. DTL disclosed the Confidential Information and Eco-Ag to DuPont in confidence.

93. On information and reasonable belief, DuPont adopted and used DTL's Confidential Information and Eco-Ag.

94. Plaintiff is entitled to damages and equitable remedies, including injunctive relief, to enjoin DuPont from its continued use of DTL's Confidential Information and ideas.

## COUNT VIII
## FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) AGAINST DUPONT

95. DTL realleges all of the allegations set forth above in paragraphs 1-45 as if set forth herein.

96. DTL and DuPont were engaged in trade or commerce in Florida

97. DuPont, among other things, willfully and maliciously misappropriated DTL's Confidential Information and ideas.

98. DuPont's actions constitute unfair or deceptive acts or practices or unconscionable acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, sections 501.201 through 501.213 of the Florida Statutes.

99. As a result of DuPont's unfair or deceptive acts or practices or unconscionable acts or practices, DTL would not have disclosed its Confidential Information or ideas to Valmont.

100. As a result of DuPont's unfair or deceptive acts or practices or unconscionable acts or practices, DTL has sustained and continues to sustain substantial actual damages.

**COUNT IX**
**UNFAIR COMPETITION**
**AGAINST DUPONT**

101. DTL realleges all of the allegations set forth above in paragraphs 1-45 as if set forth herein.

102. DuPont's use of the Confidential Information to sell irrigation products in competition with DTL's irrigation products constitutes unfair competition pursuant to 15 U.S.C. § 1125(a) and Federal common law.

103. DuPont's unfair competition has caused and will continue to cause damage to DTL, and is causing irreparable harm to DTL for which there is no adequate remedy at law.

104. DuPont has been unjustly enriched through its actions and should be disgorged of any unjust gains.

**COUNT X**
**BREACH OF CONTRACT**
**AGAINST DUPONT**

105. DTL realleges all of the allegations set forth above in paragraphs 1-45 as if set forth herein.

106. DTL entered into a non-use and non-disclosure agreement with DuPont. The Nondisclosure Agreements are valid and enforceable contracts. The confidentiality and nonuse covenants and other provisions contained in the agreements are reasonably necessary to protect legitimate protectable interests in trade secrets, confidential information, customer relationships, work force, and goodwill.

107. DTL has fully performed all of its obligations under the Nondisclosure Agreements.

108. DuPont is breaching and threatens to continue to breach the Nondisclosure Agreement by, among other things:

    A.    continuing to jointly develop with Valmont the Root Demand Irrigation subsurface irrigation system in violation of the Nondisclosure Agreements;

    B.    disclosing to other third parties the Confidential Information in violation of the Nondisclosure Agreements; and

    C.    otherwise utilizing DTL's Confidential Information in a manner for their benefit or to the detriment of DTL in violation of the Nondisclosure Agreements.

109. DTL has been damaged by DuPont's breach of the Nondisclosure Agreements.

WHEREFORE, Plaintiff prays that:

    A.    An injunction be granted preliminarily and permanently restraining Defendant's and all those in privity with it from further use of Plaintiff's trade secrets and ideas;

    B.    Defendants be required to account to Plaintiff for damages recoverable by Plaintiff pursuant to Fla. Stat. § 688.004 as a result of Defendant's misappropriation of Plaintiff's trade secrets;

    C.    Plaintiff be awarded all damages suffered by Plaintiff as alleged herein;

    D.    Defendant be ordered to disgorge all improper benefits, profits, and/or gains;

    E.    Plaintiff be awarded reasonable attorney fees;

    F.    Plaintiff be awarded its costs; and

    G.    Such other and further relief be granted to which Plaintiff may be justly entitled.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 7, 2014                    Respectfully submitted,

*/s/ Woodrow H. Pollack*
Woodrow H. Pollack
Trial Counsel
Florida Bar No. 026802
Michael J. Colitz III
Florida Bar No. 164348
GrayRobinson, P.A.
401 E. Jackson Street
Suite 2700
Tampa, FL 33602
(813) 273-5000
(813) 273-5145 (facsimile)
woodrow.pollack@gray-robinson.com
michael.colitz@gray-robinson.com