# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DEVELOPMENTAL TECHNOLOGIES, LLC )
A Florida Limited Liability Company )
                                                                    )
      Plaintiff,                            )      Case No.: 8:14-cv-02796-MSS-EAJ
                                                                     )
v.                                                                   )
                                                                    )
VALMONT INDUSTRIES, INC. a Delaware )
Corporation and E.I.DU PONT DE NEMOURS )
AND COMPANY, a Delaware Corporation, )
                                                                    )
     Defendants.                        )

**PLAINTIFF DEVELOPMENTAL TECHNOLOGIES LLC's RESPONSE IN OPPOSITION TO DEFENDANT E. I. DU PONT DE NEMOURS AND COMPANY'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHOUT REDACTION OF NON-PARTY IDENTITIES AND MOTION FOR PROTECTIVE ORDER**

Plaintiff, DEVELOPMENTAL TECHNOLOGIES, LLC ("DTL"), by and through the undersigned attorney, and in accordance with Local Rule 3.01, hereby files this response in opposition to Defendant DU PONT DE NEMOURS' ("Du Pont")'s Motion to Compel Production of Documents By Plaintiff Developmental Technologies, LLC Without Redaction of Non-Party Identities and Motion for Protective Order and states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1. Plaintiff, DTL, has filed the instant action asserting claims against both Defendants, VALMONT and DU PONT (hereinafter collectively referred to as "Defendants") for Misappropriation of Trade Secrets, Misappropriation of Idea, violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Unfair Competition and Breach of Contract. *See* Amended Complaint, D.E. 23.

2.      As background, DTL is a privately held research and development company whose Eco-Ag responsive subsurface irrigation system delivers water and nutrients to plant life based upon a plant's needs using a mix of patented and proprietary methods. *See* Affidavit of Michael Gould, Dtk. 53, at ¶ 4. *See also* Amended Complaint, D.E. 23, at ¶ 25.

3.      This action arises out of, *inter alia*, Defendants' unauthorized removal, misappropriation, and use of DTL's Eco-Ag product. *See* Amended Complaint, D.E. 23, at ¶ 4.

4.      DTL's product, Eco-Ag, is an irrigation system, method, and technique that uses a non-woven material treated with a chemical polymer to form the tubing material of the irrigation system. Details regarding the treated material and polymer, and the methods and techniques in connection therewith, are confidential trade secret intellectual property belonging to DTL. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 5. *See also* Amended Complaint, D.E. 23, at ¶ 26.

5.      DTL's general business model is to develop technologies to the commercial stage and then to sell the intellectual property portfolio and/or to partner strategically with other companies that have a financial interest in the agricultural industry. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 6. *See also* Amended Complaint, D.E. 23, at ¶ 27.

6.      Accordingly, DTL's trade secrets derive independent economic value from not being generally known to, and not being readily ascertainable by proper means by other persons. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 7. *See also* Amended Complaint, D.E. 23, at ¶ 30.

7.      DTL maintains the secrecy of its trade secrets utilizing multiple efforts that are reasonable under the circumstances. These efforts include, among other things, requiring third parties to sign and abide by non-disclosure and non-use agreements. Any and all third parties accessing DTL's trade secret, confidential and proprietary information regarding its Eco-Ag

product were only permitted to do so after signing non-disclosure and non-use agreements. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 8. *See also* Amended Complaint, D.E. 23, at ¶ 31.

8. Defendants were approached by DTL regarding the Eco-Ag product. DTL kept the Eco-Ag product a secret and only disclosed the technical details surrounding its design, construction, use and operation to those entities and individuals that DTL chose to disclose such information to and who signed a non-disclosure and non-use agreement, such as Defendants. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 9. *See also* Amended Complaint, D.E. 23, ¶ 5.

9. Starting in 2009, DTL entered into talks with Defendants, DU PONT, and VALMONT separately, to sell the IP portfolio of the Eco-Ag product. *See* Affidavit of Michael Gould at paragraph, D.E. 53, at ¶ 10. *See also* Amended Complaint, D.E. 23, at ¶¶ 32-33.[1]

10. In addition to sharing select confidential and trade secret information regarding the technological aspects of the Eco-Ag product with DU PONT and VALMONT, unequivocally subject to non-disclosure and non-use agreements described herein, DTL also shared limited and pertinent financial information with the Defendants. DTL's disclosure of such information required extensive research over several months by DTL staff working in conjunction with agriculture and financial consultants to compile a complex financial model and market plans. The financial model and market plans were and remain proprietary to DTL. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 11. *See also* Amended Complaint, D.E. 23, at ¶ 14.

11. DU PONT, having the capability to manufacture DTL's product, requested that DTL refer several leading irrigation companies that might be interested in forming a joint venture or partnership in order to purchase the Eco-Ag intellectual property portfolio. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 12.

---

[1] DU PONT is a manufacturer in the agriculture industry and VALMONT is a well-known entity in the irrigation industry.

12. In response, DTL provided DU PONT with a choice of three different companies to partner with, and DU PONT chose VALMONT as its agricultural partner. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 13. *See also* Amended Complaint, D.E. 23, at ¶ 47.

13. Defendants and their agents were required to and did in fact sign multiple non-disclosure and non-use agreements prior to viewing any of DTL's confidential and proprietary information regarding the Eco-Ag product. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 14. *See also* Amended Complaint, D.E. 23, at ¶¶ 8, 34-37.

14. In accordance with and subject to the parties' agreements, DTL also gave DU PONT and VALMONT limited permission to discuss the confidential information between themselves, which permitted two separate occasions for such discussion in order to discuss the acquisition the Eco-Ag product. Importantly, discussions regarding any other partnership opportunities were strictly prohibited. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 15. *See also* Amended Complaint, D.E. 23, at ¶ 48.

15. During this time DTL continued to meet with other prospective buyers, always subject to confidentiality and non-disclosure agreements, that appeared to be a good fit to acquire its technology. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 16.

16. In 2011, DTL entered into an agreement with AgriCapital Corporation ("AgriCapital"), an investment bank for the agribusiness industry, through which AgriCapital acted as a broker for DTL, assisting DTL in its search for potential buyers of the Eco-Ag product. *See* Affidavit of Michael Gould, D.E. 53, at ¶ 17.

17. All information provided by DTL to AgriCapital or created/utilized by AgriCapital, including that which was stored in the confidential data room and set forth in the CIM, was and remains subject to the confidentiality, non-disclosure and non-use agreements

between the DTL and AgriCapital that were executed in order to carry out the brokerage relationship.  *See* Affidavit of Michael Gould, D.E. 53, at ¶ 20.

18. Likewise, all prospective buyers identified or contacted by AgriCapital in carrying out its services on behalf of DTL were required to execute non-disclosure and non-use agreements prior to any dissemination by AgriCapital of DTL's confidential information.  *See* Affidavit of Michael Gould, D.E. 53, at ¶ 21.

19. In carrying out the brokerage relationship - subject to non-disclosure and non-use agreements and utilizing the security measures described above - AgriCapital granted access to DTL's select confidential, trade secret and proprietary information to approximately 25 select prospective buyers.  *See* Affidavit of Michael Gould, D.E. 53, at ¶ 23.

20. On May 5, 2015, DU PONT served Defendant E.I. Du Pont De Nemours and Company's First Request for Production of Documents to Plaintiff Developmental Technologies, LLC.

21. On June 17, 2015, Plaintiff served its responses and objections to DU PONT's Request for Production.

22. On June 25, 2015 and July 1 2015, the undersigned conferred with counsel for DU PONT and counsel for VALMONT via telephone regarding RPFs 1, 3, 4, 5 and 12 which seek as follows:

> RFP 1. All Non-Disclosure and Non-Use Agreements by and between DTL and any other person, including, but not limited to, all drafts thereof.
>
> RFP 3. All documents and emails relating to any actual or potential authorization or consent to disclosure or use of any of the Confidential Information or any information subject to a Non-Disclosure and Non-Use Agreement, including, but not limited to, the "permission to discuss the Confidential Information" referred to in paragraph 48 of the First Amended Complaint.

>RFP 4.     All documents and emails relating to any actual or potential request for return or destruction of any of the Confidential Information or of any information subject to a Non-Disclosure and Non-Use Agreement.
>
>RFP 5.     All documents and emails relating to any communication, transmission, or delivery of any of the Confidential Information to any person who was not, at the time of the communication, transmission, or delivery, an employee of DTL.
>
>RFP 12.    A complete "history & pending report" from DTL's "Goldmine" software relating to each person with which DTL, or any person or entity working for or on behalf of DTL or representing DTL, communicated or sought to communicate regarding Eco-Ag, any part or component of Eco-Ag, any of the Confidential Information, or any Trade Secret or intellectual property relating to Eco-Ag.

23.     During the two part telephone conference, the undersigned offered to produce responsive documents identifying potential investors in, purchasers of, or joint venturers with regard to DTL's "Eco-Ag" product with identifying information being redacted prior to production of same whereas DTL objects to producing such information because the information is unnecessary and irrelevant to DU PONT's defense and its disclosure would be unjustifiably harmful to DTL.  The third parties would be identified by a number or letter in order to protect their identity from becoming known by Defendants.

24.     DU PONT is unwilling to agree to DTL's proposal, thus, the parties have reached an impasse as to the issue of production with redaction of information that could identify such third parties.

25.     Consequently, on July 6, 2015, DU PONT filed its motion to compel production of the documents without redaction of the non-parties identities.

## ARGUMENT

Defendant, DU PONT's, Motion seeks to compel Plaintiff, DTL, to produce documents in response to its RFP's numbered 1, 3, 4, 5, and 12 *without* redaction of non-party identities. DTL has offered to produce documents in response to DU PONT's RFPs numbered 1, 3, 4, 5,

and 12 with non-party identities and contact information redacted, substituting the name with an identifying number of letter. DTL resists producing the documents without redaction of the non-party identities because such information is unnecessary, irrelevant, and sought for an improper purpose. DU PONT rejects DTL's proposal and seeks an order compelling production of the documents without redaction.

Under Rule 26, parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Relevancy is defined as information that "appears reasonably calculated to lead to the discovery of admissible evidence." Id. Notwithstanding the broad scope of "relevance" defined under Rule 26, discovery should be precluded if "it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise the subject matter of the action." Coty Inc. v. Lenu, Inc., 2010 U.S. Dist. LEXIS 138360, at *15-16 (S.D. Fla. 2010). Additionally, though the scope of permissible discovery is generally limited to information that is relevant to a claim or defense,

> Discovery requests may be limited if '(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had an opportunity by discovery to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, and the importance of the proposed discovery in resolving the issues.'

*Armor Screen Corporation v. Storm Catcher, Inc.*, 2008 U.S. Dist. LEXIS 106370, * 7-8 (S.D. Fla. 2008) (quoting Fed. R. Civ. P. 26(b)(2)).

If a motion to compel disclosure or discovery is denied or granted in part and denied in part, the court may enter an order of protection. Fed. R. Civ. P. 37(a)(5)(B), (C). A party resisting discovery has the initial burden of showing that information sought is "confidential and that disclosure of that information might be harmful." American Standard, Inc. v. Humphrey,

7

2007 U.S. Dist. LEXIS 28880, at *2-3 (M.D. Fla. 2007).  Once the party has established both prongs, the party seeking to compel the disclosure must show that the discovery sought is both relevant to the pending action and necessary." Id.

"[C]ourts have acknowledged that disclosure of confidential information to a competitor is presumed to be harmful to the disclosing entity." Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc., 216 F.R.D. 533, 535 (M.D. Fla. 2003) (citing American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 741 (Fed. Cir. 1987) and the cases cited therein).  "[T]he court must weigh factors such as relevance, the need of the party for the documents, the breadth of the document request, and the time period covered by the request against the burden imposed on the person ordered to produce the desired information." Id.

The identities and contact information for the non-parties is irrelevant and unnecessary to DU PONT's defense.  While DU PONT asserts that the identifying information is necessary to disprove that DTL took reasonable steps to protect its secrecy, replacing the identifying information of the non-parties does not hinder DU PONT's ability to evaluate DTL's interactions and efforts to maintain confidentiality with the non-parties demonstrated by the unredacted portions of the documents.  Specifically, any and all third parties accessing DTL's trade secret, confidential and proprietary information regarding its Eco-Ag product were only permitted to do so after signing non-disclosure and non-use agreements.  DTL believes that the true purpose of the motion to compel is to harass and unduly burden DTL and the non-parties.  It is logical to conclude that prospective investors in, purchasers of, or joint venturers with regard to DTL's "Eco-Ag" product who have not yet entered into a purchase agreement with Plaintiff could be intimidated or scared off from pursuing a transaction if doing so would result in immediately being served with a subpoena from Defendants' attorneys.  Nonetheless, DU PONT continues to

push for the non-parties identifying and contact information without even exploring the information that can be gathered from DTL itself. DU PONT's actions are indicative of an improper purpose: that the motion to compel is being used to harass the non-parties and interfere with the potential sale of DTL's Eco-Ag product.

Additionally, the third party information sought by DU PONT is confidential, proprietary, business information and disclosure of such information would cause harm to DTL. As described in the Complaint, the instant action is based on the Defendants' unauthorized removal, misappropriation, and use of DTL's trade secrets and violation of the non-use agreement entered into between the parties. Contrary to DU PONT's assertion otherwise, this case centers on Defendants' violation of the non-disclose and non-use agreements entered into by the parties by which Defendants created a product to directly compete with DTL's "Eco-Ag" product. "[C]ourts have acknowledged that disclosure of confidential information to a competitor is presumed to be harmful to the disclosing entity." Cytodyne Technologies, Inc. v. Biogenic Technologies, Inc., 216 F.R.D. 533, 535 (M.D. Fla. 2003) (citing American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 741 (Fed. Cir. 1987) and the cases cited therein). Providing DU PONT with the names and contact information of other prospective investors in, purchasers of, or joint venturers with regard to DTL's "Eco-Ag" product would give DU PONT an unfair advantage in the marketplace – essentially providing them with DTL's confidential, proprietary information which could then be used to Defendants' advantage in marketing the very product it misappropriated from Plaintiff. Furthermore, production of documents with information identifying prospective investors, purchasers or joint venturers, in addition to compromising Plaintiff's ability to negotiate with such third parties, could also hinder DTL's ability to mitigate

its damages caused by Defendants' unauthorized removal, misappropriation, and use of Plaintiff's trade secrets.

Moreover, DU PONT is unable to meet its burden of showing that the discovery sought is relevant and necessary to its defense. As acknowledged by DU PONT in its motion to compel, DTL has agreed to produce all responsive documents within the scope of RFPs 1, 3, 4, 5, and 12 subject to redacting the names and contact information of the non-parties. DTL's proposal is reasonable in light of the irrelevance of the non-party identities and contact information, especially when weighed against the potential harm to DTL if it is forced to disclose same. Therefore, the Court should deny Defendant E. I. Du Pont De Nemours and Company's Motion to Compel Production of Documents by Plaintiff Developmental Technologies, LLC without redaction of Non-Party Identities.

For the same reasons that justify DTL's resistance to DU PONT's motion to compel, a protective order should be granted to preserve DTL's prospective business relationships with the non-parties. DTL has invested countless hours attempting to facilitate a sale with the prospective investors. If DU PONT is permitted to interfere and burden the non-party prospective investors with discovery, there is an unreasonably high risk that the valuable time and effort expended by DTL will be wasted. Accordingly, the Court should enter an order of protection allowing DTL to redact the identifying information and contact information of the non-parties and replace such information with an alternative identifying number of letter. Doing so will benefit both parties, as it will help facilitate the mitigation of the damages caused to DTL by DU PONT's unauthorized removal, misappropriation, and use of DTL's Eco-Ag product.

WHEREFORE, for the reasons set forth herein in, respectfully requests this Honorable Court enter an order denying DU PONT's motion to compel, and enter a protective order

directing that DTL is permitted to produce the documents responsive to DU PONT's RFPs 1, 3, 4, 5, and 12 with the names and contact information of the non-parties redacted and replaced with an alternative identifying number of letter.

Respectfully submitted this 20th day of July, 2015.

/s/ Jeffrey W. Gibson_____
Noel P. McDonell, Esq.
Florida Bar No. 0899232
npm@macfar.com
Jeffrey W. Gibson, Esq.
Florida Bar No. 0568074
jg@macfar.com
**MACFARLANE FERGUSON & MCMULLEN, P.A.**
201 N. Franklin Street, Suite 2000
Tampa, FL 33602
P.O. Box 1531, Tampa, FL 33601
(813) 273-4200 – Telephone
(813) 273-4396 – Facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on this 20th day of July, 2015. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jeffrey W. Gibson\_\_\_\_\_
Jeffrey W. Gibson, Esq.